O’Neall, J.
Upon the first, third, and fifth grounds of the prisoner’s motion, we concur in the view of the presiding judge below, as well for the reasons which he has assigned, as for those which were given for our judgement in the cases of The State v. Massey, and The State v. Baldwin.
Ante, 379.
The second and fourth grounds arise out of the same subject, and may very Well be considered together. I agree with the presiding judge below, that a tales is allowed in criminal as well as civil cases : the authority to which he has referred, 1 Ghitty’s Crim. Law, 518, is full to this point. But without resorting to the analogies of the English law, which depend very much on statutes not of force here, I think the same result will be obtained by examining the provisions of our acts which provide for and regulate the manner in which juries are to bo drawn.
The acts of 1731 and 1769 are general in their provisions in relation to talesmen, and apply as well to criminal as to *384 civil cases. But the act of 1789 puts the matter beyond all doubt, by allowing talesmen to be drawn for the grand jury. 1 Brev-Dig. tit. 106, sections 26, 37, 40. The prisoner is not entitled to a copy of the panel of the plea and petit jury annexed to the venire; there is, therefore, no ground in this respect for the complaint which has been urged, that if talesmen were to be his jurymen, that he would have no means of knowing them until they were called into the box. There is, I think, great wisdom in not allowing a copy of the panel to the prisoner : if he were allowed to have it, it might be the means of enabling him to obtain an acquittal by bribery or influence. As it is, his triers are unknown to him until Court, and often until called into the box: impartiality is thus most usually obtained, for the suppression of crime and the protection of innocence.
P, Ik 124,
As to the mode in which the talesmen are to be obtained for the trial of a prisoner, I think there can be no doubt that the course which was pursued on this trial is the correct one. If we will look only to our own jury law, and not to the precedents predicated on the English statutes, which are not of force in this State, the reasons for our judgement will be apparent. The jury law of 1731 directed the jury box to consist of six divisions, and provision was made for placing the names of the inhabitants in each of these divisions for the different classes of jurors. It is unimportant to notice more particularly any of its provisions, except that part which is contained in the 26th sec. of the 106th title, 1 Brev. Dig. 27th sec. of the act of 1731, P. L. 127. it provides, " And in ease it shall happen at any of the Courts herein before mentioned, a sufficient number of jurors shall not appear, of those who are named in the panel annexed to the venire facias, it shall and may be lawful for the Chief Justice to order the number that are wanting tobe drawn by ballot, out of the divisions numbered five or six, and in case of challenges or non-appearence, to draw others out of the said divisions, till the jury shall be completely filled." This act obviously contemplated the drawing of the talesmen, and calling them into Court as they might be needed. It supposes, it is true, that all who may be needed for one trial may be drawn at once: but there is no authority given to issue a venire facias, a habeas corpus, or a distringas: it therefore depended on the presumption, that as the tales was de circumstantibus, that those drawn would answer and come into Court on being called. The succeeding words make this construction still more plain :' they provide that if the jurors drawn as talesmen should be challenged or should fail to appear, that others were to be drawn “till the jury shall be completely filled.” This is a resort to successive drawings and calls of the talesmen into Court, until the formation of the jury is completed- Such must *385 be the construction of the 27th sec. of the act of 1731, in the first, and every successive attempt to obtain a sufficient number of talesmen to complete the jury. Indeed it is the only pos. sinlc construction which can bo given to it. to make it effectual, unless the power to issue the usual writs known to the Be. glish law had been by it conferred ou the Circuit Court. This power not being given, we can only draw the tales and cal] the jurors so drawn; if they appear, it is well; if not, others must be drawn and called until the jury be filled.
The act of 1769, (17th sec. P. L. 272; 1 Brev. tit. 100. sec. 37) provides in relation to this matter, that «;¡, box con» taming the names of special jurors, to consist of the inhabitants of Charlestown for Charlestown district, and of persons living mthinfive miles of the several Cowt Houses, for each district or precinct respectively, out of which said lists of special jurors, hath in town and country, all tales shall he drawn.” This provision points out who shall constitute the class out of which special juries may be formed, and from which the talesmen are to be drawn; but this does not alter the manner in which they were to be drawn or their attendance procured. The succeeding paragraph of the section, directing that “ the jurors for the said Courts shall be drawn, summoned and impanelled, as nearly as may he, in the same manner as grand and petit jurors now are,” relates exclusively to the regular juries of the Court, and not to the tales.
These provisions are all the enactments which we have en the subject of the tales, and from them taken together, I am satisfied, that as needed in the formation of a jury, each tales juror is drawn and called — if he comes into Court, he is to be presented to the prisoner; if not, another is to be drawn and called, and so on until the jury is filled.
But if there had been any thing in the prisoner’s objection in this respect, it is now too late to be made available to him. It was cause of challenge to the polls (if it was any thing,) and must be objected to the juror as “he comes to the book to he sworn, and before he is sworn.” After the tales men were sworn they were, with their fellow, a jury of the peers of the prisoner ; and no objection could then lie to them either in the polls or in the array.
The remaining grounds may be disposed of together. In 1 Chitt. crim. law, 541, it is said, “A challenge propter defectum may be either on account of some personal objection, as alienage, infancy, old age, or a deficiency in the requisite property.” The qualification under our jury law is a residence of two years in the State, a freehold of fifty acres of land, or a town lot of which the juror shall have been legally seized and .possessed at least six months’previous to the election, or not *386 having such freehold or 'town lot, six months residence in the and a payment of 3 shillings sterling tax towards the sup* port of the government. A want ofthis qualification, as we have geen from the English law, is only cause of challenge propter Sefectum; it is therefore an objection to each juryman as he is presented to the prisoner. If when so presented he is legally qualified to sit on the jury, there can be no challenge to him propter defectum,; unless there is some legal provision fixing his legal qualification at an earlier moment. There is, I think, nothing in our acts which would have this effect. For notwithstanding the act of 1799 directs that from the tax returas the names of such persons who are entitled by the Constitution of this State to vote for members of the State Legislature shall alone be transcribed and put in the jury box, yet this .provision is merely directory to the public officers in the discharge of their duty, and dees not fix the qualification of the juror to be determined from the fact that his name is found in the jury box. If he had the qualification at that time, and af-terwards ceased to be qualified, he could not (if objected to) be sworn of the jury. This shews that the objection is personal to the juror, and must be determined by his qualification at the time when the challenge is made.
Bausket, for tho motion.
Thompson, Sol. contra.
But if there was any provision requiring the property qualification of the grand plea and petit jurors to exist at the time their names were placed in the jury box, it is plain there is no such provision in relation to tales jurors. The act of 1769, it will be seen by referring to the paragraphs which I hare already cited, does not require any property qualification for a tales juror ; it makes his residence within a specified distance from the Court House his qualification to go-into the jury box. This designates tho class of the inhabitants out of which the tales jurors are to be drawn •; and if at the time such juror is drawn, called into Court and presented to the prisoner, he has the property'qualication required for jurymen, he is entitled to be sworn of the jury.
The seventh ground depends upon the fourth. The decision that the talesmen are to be drawn and called into court as needed, causes to be preferred him who first answers and appears, to him who was first drawn and called but did not answer; and hence Penn was properly presented to the prisoner, as a juror, before Loften and Tillman,
Harper, J. concurred.